**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*



**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

March 9, 2026

**VIA ECF**

Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

    Re:    *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

    This letter responds to the appellant's Rule 28(j) letter (ECF 89) concerning *KalshiEX LLC v. Orgel*, No. 3:25-cv-34, 2026 WL 474869 (M.D. Tenn. Feb 19, 2026). That decision does not counsel in favor of reversal here.

    First, *Orgel* held that Tennessee's sports wagering statute is conflict-preempted by the Commodity Exchange Act because Tennessee law would require Kalshi to establish a "Tennessee-only exchange." (ECF 89, at 19). As previously explained, however, complying with Maryland law would not require Kalshi to establish a Maryland-only exchange. Nor would doing so violate any impartial-access obligation, any more than would restricting betting to persons over 21. *See* Appellees' Br. 46. Instead, the Commodity Exchange Act and Maryland's sports wagering laws work in tandem, and Kalshi can comply with both. Appellees' Br. 15, 45.

Second, *Orgel* also was incorrect to decide that sports wagers are "swaps." *Orgel* wrongly conflated an event's occurrence (whether a game takes place) with its outcome (who wins the game). By *Orgel*'s logic, all manner of casino outcomes (e.g., whether a roulette ball lands on red) can be characterized as "events." *See* Appellee's Br. 51-53. Further, in focusing on the word "potential," *Orgel* effectively ignored that whether a contingency is "potential"—i.e., "[c]apable of coming into being" or "possible if the necessary conditions exist"[1]—says nothing about the closeness of its connection to an underlying cause. The definition of "swap" specifies that connection by requiring that an event be *associated with* (joined or connected together) a potential financial, economic, or commercial *consequence* (something produced by, or necessarily following from, the event). Appellees' Br. 53-54. Ignoring these requirements sweeps in all externalities with no clear limiting principle. Appellees' Br. 55-56.

Finally, in deeming sports wagers "swaps" and asserting a conflict between state and federal law, *Orgel* ignored the Wire Act's prohibition against the transfer of "bets and wagers" across State lines. 18 U.S.C. § 1804(a). That prohibition confirms that the definition of "swap" cannot be interpreted so broadly as to encompass the sports wagers at issue here, regardless of their form.

                                                Respectfully submitted,

                                                /s/ Erik Delfosse

                                                _____

                                                Erik Delfosse

cc: All Counsel of Record

---

[1] *Potential*, Black's Law Dictionary (12th ed. 2024).