**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*



**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING**
**CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*

March 31, 2026

**VIA ECF**

Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

     Re:    *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

      On behalf of the appellees, I write to notify the Court of the recent decision in *KalshiEX LLC v. Matthew T. Schuler, et al.*, No. 2:25-cv-01165-SDM-CMV, 2026 WL 657004 (S.D. Ohio March 9, 2026) (attached as Exhibit 1). *Schuler* denied Kalshi's request to preliminarily enjoin enforcement of Ohio's sports wagering laws for reasons that mirror the appellees' arguments here.

      *Schuler* held that sports wagers are not "swaps" within the Commodity Exchange Act's exclusive jurisdiction. Op. 13; *see* Appellees' Br. 50-57. Swaps involve "financial instruments and measures that traditionally and directly affect commodity prices," not sporting contests. Op. 11-12 & n.4 (disagreeing with *KalshiEX LLV v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 18, 2026)). Kalshi's position, the court reasoned, would produce absurd results by

forcing all sports bets "onto DCMs like Kalshi" and putting every sportsbook in the country "out of business." Op. 12-13; *see* Appellees' Br. 33-36.

*Schuler* also held that, even if sports wagers were swaps, state sports wagering law was not field-preempted because "all available evidence" establishes that Congress lacked the "clear and manifest purpose" to "upset the recognized and coherent federal policy" respecting state gambling laws. Op. 14, 16-17. First, the Act's savings clause, 7 U.S.C. § 2(a)(1)(A), grants states "ample room" to regulate "matters tangential to trading swaps and commodity futures on DCMs." Op. 17. Second, the Act's express preemption provision, 7 U.S.C. §16(e)(2), preempts state gaming laws for electronic trading facilities, but not for swaps. Op. 17-18; *see* Appellees' Br. 27-29. Third, "the CFTC has itself recognized Congressional intent to 'prevent gambling through the futures markets.'" Op. 18.

Finally, *Schuler* rejected conflict preemption. Obstacle preemption did not apply because the Act's "text, structure, and history" establish that Congress did not intend to preempt state sports wagering laws, and even "the CFTC prohibits DCMs from listing any event contract 'that involves, relates to, or references . . . gaming.'" Op 19 (citing 17 C.F.R. § 40.11(a)). Nor did impossibility preemption apply, because the Commodity Exchange Act's impartial-access rule does not conflict with Ohio's location-based requirements. Op. 20; *see* Appellees' Br. 46-47.

Respectfully submitted,

/s/ Erik Delfosse

_____

Erik Delfosse

cc: All Counsel of Record