

# Milbank

**WILL HAVEMANN**

*Partner*

1101 New York Ave., N.W. | Washington, DC 20005

T: +1 (202) 835-7518

whavemann@milbank.com | milbank.com

April 9, 2026

**By Electronic Filing**

Nwamaka Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street
Suite 501
Richmond, VA 23219

> Re:     ***KalshiEX LLC v. John A. Martin, et al.*, No. 25-1892**
>           **FRAP 28(j) Letter Response**

Dear Ms. Anowi:

*Schuler* is unpersuasive for numerous reasons. *Schuler* interpreted "swap" to require an event with an "inherent" connection to financial consequences. Op.11. That contradicts the CEA's text, which requires an event associated with "potential" financial consequences. 7 U.S.C. § 1a(47)(A)(ii). *Schuler* further maintains that a qualifying event must "traditionally and directly *affect commodity prices*." Op.11-12. But the definition does not reference commodity prices at all. Even if it did, the CEA defines "commodity" to include an "occurrence" or "contingency." 7 U.S.C. § 1a(19)(iv).

*Schuler*'s extratextual limits contravene Congress's clear intent to define "swap" broadly. *See* 7 U.S.C. § 1a(47)(A)(iv) (defining swap to include any agreement "that is, or in the future becomes, commonly known to the trade as a swap"). Congress further enumerated exclusions from the definition, *id.* § 1a(47)(B), and authorized the CFTC and SEC to "further define" "swap" by regulation, 15 U.S.C. § 8302(d)(1), underscoring that Congress did not want courts to add their own extratextual limitations. And Congress specifically contemplated "event contracts" involving "gaming," making clear that Congress did *not* define such contracts out of the term "swap." *See* 7 U.S.C. § 7a-2(c)(5)(C)(i). Nor is a limiting construction needed to avoid forcing "all sports bets" onto DCMs. Op.12. The CFTC has recognized that non-tradable transactions like sports bets are not derivatives and thus need not be traded on-DCM. 77 Fed. Reg. 48,208, 48,212-13 (Aug. 13, 2012).

*Schuler* rejected field preemption, but its reasoning underscores that the CEA's "preemptive effect" applies contracts if Kalshi's contracts are "swaps and futures traded on DCMs." Op.17.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

The court misunderstood the import of 7 U.S.C. § 16(e)(2), which preempts state law as to excluded *off-DCM* transactions. As Kalshi explained, Congress recognized in enacting that provision that the CEA already preempted state law as to on-DCM transactions. Reply Br.9.

As to conflict preemption, *Schuler* concluded that complying with state-by-state geographic restrictions would not violate Kalshi's "impartial access" obligation. Op.20; *see* 17 C.F.R. § 38.151(b). But the CFTC has confirmed compliance with state geographical restrictions is an "impossibility" for DCMs. *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir.), Dkt. 38.2 at 27.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*

cc:      All Counsel (via ECF)
Word Count: 350

2