**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*



**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING**
**CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

April 30, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

  Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

  This letter responds to the appellant's Rule 28(j) letter (ECF 89) concerning *KalshiEX, LLC v. Flaherty*, No. 25-1922, 2026 WL 924004, at *6 (3d Cir. Apr. 6, 2026). The cited sources are unpersuasive, and it is the *Flaherty* dissent that has the better of the argument.

  First, contrary to the *Flaherty* majority and the CFTC, the "exclusive jurisdiction" provision is meant not to prevent a "patchwork" of state regulations, but to divide jurisdiction between the CTFC and the SEC. Appellees' Br. 5-12, 25, 41; *see* S. Rep. No. 93-1131 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5843, 5863 (explaining that Congress "did not wish to infringe on the jurisdiction of the Securities and Exchange Commission or other government agencies." *see also* S. Rep. No. 95-850, 21-23 (1978) (dividing securities and commodity futures

jurisdiction); H.R. Rep. No. 97-565, at 44 (1978) (noting commodity futures' "esoteric nature");

Second, contrary to the *Flaherty* majority's protestations, its holding does indeed mean that states cannot regulate off-exchange sports wagers. That is because, if sports wagers are swaps regulable only by the CFTC, they *must* be traded on futures exchanges under pain of criminal penalties. 7 U.S.C. §§ 2(e), 6d(a)(1), 13(a)(2)(5). The CFTC's position yields the same conclusion. Doc 95-5 at 7 ¶31 ("must be conducted on exchanges").

Third, the *Flaherty* majority misunderstands prior CFTC action, and the CFTC ignores its own regulations. Despite the majority's claim, all sports wagers currently trading on DCMs were self-certified, not certified by the CFTC. 91 Fed. Reg. at 12,517 n.9. The CFTC itself has blanket-banned gaming contracts from DCMs and provided that swaps do not include consumer and commercial arrangements not historically known as such. Appellee's Br. 11-12, 30, 56.

Fourth, the field preemption analysis incorrectly defines the field as "futures trading" (when the field is sports wagering) and does not recognize that other circuits have declined to view the CEA as field-preemptive. Appellee's Br. 23-24, 26-27.

Finally, in finding conflict preemption, the *Flaherty* majority does not explain how obtaining a state sports-wagering license would prevent Kalshi from offering sports wagers.

Respectfully submitted,

/s/ Erik Delfosse

_____

Erik Delfosse

cc: All Counsel of Record

> **Commented [MB1]:** I do think these specific sources are helpful to cite. The CFTC selectively cites these sources. We do not cite these specific sources in our brief, but we use others to make the same argument. I believe it would be helpful to specifically reference that these additional authorities further our argument too.