**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*



**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING**
**CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

May 22, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

   Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

  This letter responds to the appellant's Rule 28(j) letter (ECF 102) concerning *KalshiEX, LLC v. Johnson*, No. 2:26-cv-1715 (D. Ariz. May 5, 2026) and *PhRMA v. McCuskey*, No. 25-1054 (4th Cir. Mar. 31, 2026).

  *Johnson* was wrong to decide that sports wagers are swaps. *Johnson* Op. 6-9. For instance, *Johnson* conflated an event's "occurrence" with its outcome. *Johnson* also relied on an overly broad understanding of the phrase "associated with a potential financial, economic, or commercial consequence." Its analogy to weather outcomes does not support that understanding because weather swaps have historically been considered swaps, are dependent on events associated with financial consequences (for instance, the agricultural impact of a drought), and affect commodity prices. *See* 7 U.S.C. § 1a(47)(iii)(XVII); Appellees' Br. 50-56.

*Johnson* also erred in finding field preemption. The cases it cited do not equate "exclusive jurisdiction" with field preemption. The plain text of the Commodity Exchange Act, moreover, expressly provides room for state law through savings clauses and the Special Rule (which allows the CFTC to police its own turf, not preempt others). Further, the Act's narrow express preemption provisions do not extend to state sports wagering regulation. *See* Appellees' Br. 21-32; 39-40.

*Johnson* erred in finding conflict preemption, too. It is not impossible to comply with both state and federal law because the impartial-access requirement does not prohibit geofencing. Nor does state regulation of sports wagering stand as an obstacle to accomplishing the Commodity Exchange Act's purposes: Far from manifesting any purpose inconsistent with state regulation of gaming, Congress both incorporated and preserved the operation of state gaming laws and did not intend across-the-board uniformity. *See* Appellees' Br. 5-8, 25-26, 40-41.

Finally, *McCuskey* is inapposite. Both the state and federal statutes there concerned the same domain, namely, pricing of 340B drugs. *McCuskey* Op. 5, 15. Here, by contrast, Maryland's laws target sports wagering, while the Commodity Exchange Act targets commodity futures and swaps on DCMs. Further, *McCuskey* relied on a Spending Clause theory of field preemption, *see id.* at 30-31, that has no relevance here.

Respectfully submitted,

/s/ Erik Delfosse

_____

Erik Delfosse

cc: All Counsel of Record