

## Milbank

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

June 11, 2026

**By Electronic Filing**

Nwamaka Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street
Suite 501
Richmond, VA 23219

>   Re:   ***KalshiEX LLC v. John A. Martin, et al.*, No. 25-1892**
>          **FRAP 28(j) Letter**

Dear Ms. Anowi:

Kalshi respectfully advises the Court that the CFTC has published a Notice of Proposed Rulemaking ("NPRM")[1] to amend 17 C.F.R. §40.11.  The NPRM strongly supports Kalshi.

*First*, the NPRM confirms the CEA "granted the CFTC exclusive jurisdiction" to create "a comprehensive federal regulatory framework that expressly preempts state laws." NPRM 11. "Preemption of state law was necessary because, for decades, states had attempted to apply state gambling laws to derivatives trading."  NPRM 11n.24.

*Second*, the NPRM confirms Kalshi's event contracts are derivatives under CFTC jurisdiction.  It refutes Defendants' contention (Br.51-53) that sports-event contracts involving "outcomes" are not subject to CFTC jurisdiction.  NPRM 6n.1 (contracts "based on the outcome of an underlying occurrence or event" are quintessential derivatives contracts).  It further refutes Defendants' contention (Br.55-56) that sports events categorically lack potential economic consequences.  NPRM 8 ("sporting events" "generate billions of dollars in economic activity and materially affect both regional and national markets").  And it underscores that prediction markets serve "price discovery" functions and "allow market participants to hedge exposure to a wide array of events for which no traditional financial instrument otherwise exists," including "sporting events." *Id.*

---

[1] *Available at* https://www.cftc.gov/media/14151/NPRM_PredictionMarkets060926/download.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

*Third*, the NPRM defines "gaming" in the Special Rule to include sports-event contracts; confirms that such contracts are *not* categorically prohibited; and provides for public-interest review of sports-event contracts. NPRM 26-28,77-78. It explains that the CFTC "aims to permit contracts settled on aggregate sports outcomes with objective data and integrity infrastructure" and that many sports-event contracts "can be operated consistent with the public interest." NPRM 118,184. The NPRM also addresses the Feinstein-Lincoln colloquy Defendants invoke (Br.31), explaining that it underscores Congress's decision "not to prohibit" contracts "based on 'sporting events'" but instead to provide for CFTC public-interest review under the Special Rule. NPRM 27.

*Fourth*, while Defendants contend (Br.11,34) the current version of §40.11 "ban[s] gaming contracts from registered exchanges" pursuant to a "blanket" prohibition, the NPRM explains the CFTC "has consistently applied § 40.11 to operate a discretionary review framework rather than a self-executing *per se* prohibition, because the opposite interpretation would violate the statute." NPRM 36.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*


cc:      All Counsel (via ECF)
         Word Count: 347