

**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING**
**CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

July 1, 2026

**VIA ECF**

Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

> Re:    *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

This letter responds to the appellants' Rule 28(j) letter (ECF 107) concerning the CFTC's Notice of Proposed Rulemaking ("NPRM") regarding prediction markets. The NPRM is not entitled to deference, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024), and does not counsel in favor of reversal.

First, the NPRM does not persuasively establish that sports wagers are swaps. It does not address how swaps could be based on event *outcomes* when the statute uses "occurrence." *See* Appellees' Br. 51-53. Nor does it explain how sports outcomes could be "associated with a potential financial, economic, or commercial consequence," rather than merely having some downstream externality. *Id.* at 53-56. It merely states that some sports generate revenue and assumes that every sports wager is a swap subject to CFTC review. *See* NPRM 122-23. And it nowhere

200 St. Paul Place, Baltimore, Maryland 21202
(410) 576-6300 ❖ (888) 743-0023
oag.maryland.gov

addresses the earlier joint CFTC-SEC determination that customary consumer arrangements should not be considered swaps.  Appellees' Br. 21, 56.

Second, the NPRM is wrong to contend that the 1974 CEA amendments' purpose was to preempt states' long-ago use of anti-gambling laws to regulate commodity futures.  NPRM 9-11; *see* Appellees' Br. 6-8, 25-27, 41-42.  Rather, the "exclusive jurisdiction" provision separates commodity futures and securities jurisdiction and does not preempt state law because (1) the same subsection contains savings clauses; (2) the Act's express preemption provisions address gambling and swaps, but do not prohibit applying state gambling laws to swaps; and (3) the Special Rule addressing event contract swaps itself incorporates state law.  Appellees' Br. 22-32.

Third, the NPRM underscores that the CEA does not conflict with Maryland's Sports Wagering Act.  The NPRM proposes only narrow marketplace regulations, such as surveillance by prediction markets for fraud and manipulation.  NPRM 105, 116-18.  Such regulations complement, rather than conflict with, Maryland's health and safety regulations for responsible gaming.  (J.A. 90, J.A. 99-100.)

Finally, contrary to the NPRM, the Special Rule's text does not require solely case-by-case review. Rather, current 17 C.F.R. § 40.11(a)(1), which is consistent with 7 U.S.C. § 7a-2(c)(5)(C), states that DCMs "shall not list" contracts involving gaming. *See* Appellees' Br. 11.

Respectfully submitted,

/s/ Erik Delfosse

_____

Erik Delfosse

cc: All Counsel of Record