**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

**CHRISTIAN E. BARRERA**
*Chief of Staff*



**STATE OF MARYLAND
OFFICE OF THE ATTORNEY GENERAL
MARYLAND STATE LOTTERY AND GAMING
CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

July 6, 2026

**VIA ECF**

Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

     Re:     *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of the largely identical preliminary injunction denials in *QCX LLC, v. Nessel*, No. 1:26-cv-00710-PLM-PJG, ___ WL ____ (W.D. Mich. June 17, 2026) and *Robinhood Derivatives, LLC v. Nessel*, No. 1:26-cv-00730-PLM-PLG, __ WL ____ (W.D. Mich. June 17, 2026) ("Ops.") (attached as Exhibits 1 and 2). The court held that the plaintiffs were unlikely to establish that sports wagers are swaps or that the CEA preempts state gambling laws.

First, regarding swaps, the court emphasized states' historic interest in gambling regulation and the CEA's purpose of regulating the derivatives that contributed to the 2008 financial crisis. In this context, the court interpreted the phrase "associated with" as "limiting language" that requires a direct and inherent connection between an event's occurrence and a potential financial consequence.

Ops. 7 n.4, 12, 14, 16-17, 22. The court also explained that the Special Rule did not permit the CFTC to expand the definition of swaps and, under the definition jointly adopted by the SEC and CFTC, customary consumer transactions are not swaps. Ops. 17-20. The court found ambiguous whether the terms "event" and "contingency" include "outcomes" but observed that the broadest interpretation risked making other prongs of the "swap" definition superfluous. Ops. 5.

Second, the court rejected express preemption because "exclusive jurisdiction" is not preemptive language, the term was meant to divide securities and commodity jurisdiction, and the statute has savings clauses. Ops. 23-26.

Third, the court rejected field preemption because the CEA "relies on the existence of state law and leaves room for states to enforce both the statute itself and state laws in the same field." Ops. 26-28.

Finally, the court rejected conflict preemption because (1) neither the plaintiffs nor the CFTC "offer a coherent theory . . . that would prevent simultaneous compliance," Ex. 1, at 28; (2) the CEA "does not compel" offering sports wagers, Ex. 2, at 28; and (3) the CEA's "preservation of state regulation" meant that Congress did not seek uniformity in all aspects of derivative trading, Ops. 29-30.

Respectfully submitted,

/s/ Erik Delfosse

_____

Erik Delfosse

cc: All Counsel of Record