

# Milbank

**WILL HAVEMANN**

*Partner*

1101 New York Ave., N.W.  |  Washington, DC 20005

T: +1 (202) 835-7518

whavemann@milbank.com  |  milbank.com

July 7, 2026

**By Electronic Filing**

Nwamaka Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street
Suite 501
Richmond, VA 23219

> **Re:**    *KalshiEX LLC v. John A. Martin, et al.*, No. 25-1892
> **FRAP 28(j) Response**

Dear Ms. Anowi:

The Michigan court's conclusion that sports-event contracts are not swaps was mistaken on at least three grounds.

*First*, the Michigan court departed from the plain-language definition of "swap" for fear that it would otherwise be limitless. But Kalshi does not contend *any* event can underlie a swap; an event must be connected to possible financial consequences, subject to ordinary causation principles. Outcomes of sports events carry potential financial consequences for numerous stakeholders. Defendants' categorical assertion that *no* sporting event is associated with *potential* financial consequences is mistaken.

*Second*, that sports-event contracts are swaps does not mean run-of-the-mill sports bets are swaps. As the CFTC has explained, "consumer and commercial transactions" that "are not traded on an organized market or over-the-counter" are not swaps. 77 Fed. Reg. 48,208, 48,247 (Aug. 13, 2012); *see* 15 U.S.C. § 8302(d)(1). That tradability requirement—ignored by the Michigan court—explains why the CEA does not "forc[e] broad swaths of ordinary transactions" onto DCMs. *QCX* Op.21.

*Third*, the Michigan court wrongly concluded that Dodd-Frank's focus on "financial instruments" supports excluding sports-event contracts. *QCX* Op.10. The Special Rule specifically gives the CFTC discretion to permit or prohibit event contracts that "involve" "gaming." 7 U.S.C. § 7a-2(c)(5)(C).

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

The Michigan court also wrongly rejected preemption.  It cited certain CEA provisions to conclude the CFTC's exclusive jurisdiction "is not actually so exclusive."  *QCX* Op.27.  But those provisions preserve state authority only *outside* the preempted field—none lets states "directly affect trading on or the operation of a" DCM.  *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992).

The court also denied any conflict between state law and the CFTC's impartial-access requirement because a DCM can adopt different "fee structures" for market participants.  *QCX* Op.28.  But charging different fees is not remotely akin to banning users based on geography.  And while the court noted the CEA "does not compel" DCMs to offer sports-event contracts, *Robinhood* Op.28, "if the option of ceasing to act defeated a claim of impossibility, impossibility preemption would be 'all but meaningless,' " *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013).

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*


cc:      All Counsel (via ECF)
         Word Count: 350