**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**SECURITIES DIVISION**

**ANTHONY G. BROWN**
*Attorney General*

**MELANIE SENTER LUBIN**
*Securities Commissioner*

**KELVIN M. BLAKE**
*Assistant Securities Commissioner*

**KATHARINE M. WEISKITTEL**
*Assistant Securities Commissioner*

**PETER V. BERNS**
*General Counsel*

**MAX F. BRAUER**
*Senior Assistant Attorney General*
*Chief, Enforcement Unit*

September 2, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of *KalshiEX LLC v. Cafferelli*, No. 25-CV-2016 (VDO), 2026 WL 2294589 (D. Conn. Aug. 10, 2026) (Ex. 1), which denied motions to enjoin application of Connecticut's sports wagering act to prediction markets and, in so ruling, aligned with the appellees' positions here in three respects.[1]

*Swaps:* The court held that sports wagers are not "swaps." First, an "occurrence" is "the sporting event itself, not who wins it." *Id.* at *7. Second, sports wagers are not "associated with" a potential financial "consequence." *Id.* at *8. If "some downstream economic consequence" sufficed, the definition would be limitless. *Id.* Rather, the event "by its very nature" must have the potential

[1] In *Coinbase Financial Markets, Inc. v. Tong*, No. 25-CV-2121 (VDO), 2026 WL 2294602 (D. Conn. Aug. 10, 2026) (Ex. 2) the same court incorporated the same material facts and legal analysis.

200 St. Paul Place, Baltimore, Maryland 21202
(410) 576-6360 ❖ (410) 576-6300
oag.maryland.gov

consequence "embedded within it," excluding "externalities such as endorsement contracts triggered by a team's success" that have "significance only through external market activity." *Id.* at *9-10.

*Field preemption: Cafferelli* rejected field preemption. First, Section 2(a)(1)(A)'s savings clauses "leave room for states." *Id.* at *12. Second, the Special Rule makes clear that some state law "should operate in tandem with the CEA." *Id.* Third, the CEA expressly preempts state law only in other contexts. *Id*. Fourth, since Congress does not hide elephants in mouseholes, it is unlikely that Dodd-Frank gave states' historic sports betting powers to the CFTC. *Id.* at *13.

*Conflict preemption: Cafferelli* rejected impossibility preemption because the impartial access rule "does not require DCMs to offer contracts nationwide" but, instead, prevents discrimination. *Id*. *Cafferelli* explained that "an additional regulatory requirement" to get a license does not "establish a conflict with federal law." *Id.* at *14.

*Cafferelli* rejected obstacle preemption because some overlap "does not even begin to make a case for conflict preemption." *Id*. Connecticut's gaming law "is harmonious with [the CEA's] objectives." *Id*. Moreover, Kalshi's conduct "appears unlawful" under Rule 40.11; self-certification does not make it lawful. *Id*.

Respectfully submitted,

/s/ Max F. Brauer

____________________

Max F. Brauer

cc: All Counsel of Record