**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

September 9, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of the Ninth Circuit's August 28 decision in *KalshiEX, LLC v. Assad,* No. 25-7516, 2026 WL 2543846 (9th Cir. Aug. 28, 2026) (Ex. 1), which held that the CEA likely does not preempt Nevada's gaming laws as applied to Kalshi's sports event contracts.[1]

First, the court held that such contracts are likely not swaps. Congress, the court observed, has spoken repeatedly about gambling but did not do so in the text of the Dodd-Frank Act. *Id.* at *14. Interpreting "swap" to encompass sports event

[1] The court also issued unpublished memorandum dispositions in *North American Derivatives Exchange, Inc. v. Nevada*, No. 25-7187, 2026 WL 2546926 (9th Cir. Aug. 28, 2026) (Ex. 2), and *Robinhood Derivatives, LLC v. Dreitzer*, No. 25-7831, 2026 WL 2546925 (9th Cir. Aug. 28, 2026) (Ex. 3), both of which followed *Assad*.

contracts would raise major-questions concerns and would find elephants in mouseholes. *Id.* at *10, 14-15. Moreover, the court reasoned, Kalshi's contracts are sports bets without meaningful difference from casino bets, not financial instruments like those referenced throughout the swap definition. *Id.* at *10. Kalshi's reading of "swaps" thus would leave all off-exchange bets in violation of § 2(e)'s requirement that all swaps be traded on DCMs. *Id.* at *11. Finally, the court explained that a reading of "potential financial consequences" that "include[s] any conceivable downstream economic consequence" would be overly broad, and that the phrase "associated with" should be read narrowly. *Id.* at *12.

Second, the court held that Regulation 40.11 currently prohibits Kalshi's gaming contracts. *Id.* at *13. The regulation derives from the Special Rule, which "did not give the CFTC any more preemptive authority over gaming than it gave the CFTC authority over terrorism or assassination." *Id.* at *13.

Third, although the court read § 2(a)(1)(A) as an express preemption provision (inapplicable to sports event contracts because they are not swaps), it rejected field and conflict preemption because "Congress has explicitly not occupied the field of gambling" and state sports wagering regulation can coexist with the CEA. *Id.* at *16-17.

Respectfully submitted,

/s/ Erik Delfosse

Erik Delfosse

cc: All Counsel of Record