CAROLYN A. QUATTROCKI
*Chief Deputy Attorney General*

LEONARD J. HOWIE III
*Deputy Attorney General*

CARRIE J. WILLIAMS
*Deputy Attorney General*

SHARON S. MERRIWEATHER
*Deputy Attorney General*

ZENITA WICKHAM HURLEY
*Deputy Attorney General*

STATE OF MARYLAND
OFFICE OF THE ATTORNEY GENERAL
MARYLAND STATE LOTTERY AND GAMING
CONTROL AGENCY

ANTHONY G. BROWN
*Attorney General*

HOLLY L. KNEPPER
*Principal Counsel*

PETER V. BERNS
*General Counsel*

September 21, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of the decision in *KalshiEX LLC v. Bird*, No. 4:26-cv-00109-SHL-HCA (S.D. Iowa Sept. 8, 2026) (Ex. 1). *Bird* denied Kalshi's request to preliminarily enjoin enforcement of Iowa's sports wagering laws for reasons that mirror the appellees' arguments here.

First, the court rejected express preemption because "[g]ambling had nothing to do" with the Dodd-Frank Act, which referenced "gaming" only "in an unmistakably negative way." Op. 12-13. Even ignoring the presumption against preemption, the court reasoned, the CEA does not clearly negate Congress's endorsement of state gambling regulation in other federal statutes. Op. 14. Under § 1a(47)(a)(ii)'s swap definition, sports outcomes are not "occurrences" or "events" and are not directly associated with financial consequences. Op. 15. Kalshi's emphasis on the word "potential" in subsection (ii) was, in the court's view,

"uncritical literalism" that "would subsume every word" of subsections (i) and (iii) when, in context, event contracts are a subset of agreements involving financial instruments that "are designed to help market participants hedge risk"—not gambling contracts that create risks for ordinary consumers where none previously existed. Op. 15-18. And because "exclusive jurisdiction" arguably is not expressly preemptive (instead, separating the duties of the CFTC from the SEC), applying the presumption against preemption further weakens Kalshi's argument. Op. 18-19.

Second, the court rejected field preemption for similar reasons. To the extent that Kalshi's argument rested on the CEA's language and structure more generally, the court further stressed that it is "simply not reasonable to conclude that Congress implicitly intended to foreclose state regulation in the entire field of sports gambling when it passed a law that had nothing to do with gambling," a conclusion reinforced by the presumption against preemption and the statute's savings clause. Op. 19-20.

Finally, the court rejected conflict preemption. Emphasizing that sports wagers are not swaps, the court reasoned that state-by-state compliance "may be inconvenient for Kalshi, but it is not impossible" and noted that "other companies engaged in sports gambling already do this." Op. 21.

Respectfully submitted,

/s/ Erik Delfosse

Erik Delfosse

cc: All Counsel of Record