**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND STATE LOTTERY AND GAMING CONTROL AGENCY**

**ANTHONY G. BROWN**
*Attorney General*

**HOLLY L. KNEPPER**
*Principal Counsel*

**PETER V. BERNS**
*General Counsel*

October 1, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of *Blue Lake Rancheria v. Kalshi, Inc.*, No. 25-7504 (9th Cir. Sept. 16, 2026) (attached as Exhibit 1), which reversed the denial of a preliminary injunction against Kalshi under the Indian Gaming Regulatory Act ("IGRA"). *Rancheria* clarifies *KalshiEX, LLC v. Assad*, No. 25-7516, 2026 WL 2543846 (9th Cir. Aug. 28, 2026) and supports the appellees' position here.

First, *Rancheria* held that sports event contracts are sports betting, so as to constitute class III gaming under IGRA. Changing "vocabulary," the court reasoned, cannot alter underlying "substance": "similarities between a sports event contract, which even Kalshi calls 'sports betting,' and a traditional sports wager are overwhelming." Op. 23-24.

200 St. Paul Place, Baltimore, Maryland 21202
(410) 576-6300 ❖ (888) 743-0023
oag.maryland.gov

Second, *Rancheria* held that the Unlawful Internet Gambling Enforcement Act (UIGEA) does not carve out CEA transactions from IGRA because UIGEA explicitly preserves federal, state, and tribal gaming law. Op. 31-33. *Rancheria* noted that federal gambling statutes, such as IGRA and the Wire Act, permit interstate gambling only where the bet or wager is legal in both the originating and receiving jurisdictions. Op. 25 n.6.

Third, *Rancheria* held that, even if Kalshi's contracts were swaps, the CEA would not displace IGRA because "[t]he phrase 'exclusive jurisdiction' is not a broad grant to the Commission of control over all commodities-related matters to the exclusion of all other federal laws." Op. 35. Rather, § 2 was "intended only to consolidate federal regulation of commodity futures trading in the commission" and to "separate the functions of the Commission from those of the [SEC] and other regulatory agencies." *Id.* Thus, even if *Assad* acknowledged preemption of state regulation of DCM-traded swaps, it did not "create a roving exemption" from laws "that may apply to the same conduct for a different reason." Op. 36-37. Reaffirming *Assad's* conclusion that Congress did not take "a wrecking ball to all sports gambling regulations built up over decades," *Rancheria* concluded the CEA and gaming statutes "address two different questions." *Id.*

Respectfully submitted,

/s/ Erik Delfosse

Erik Delfosse

cc: All Counsel of Record