**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**SECURITIES DIVISION**

**ANTHONY G. BROWN**
*Attorney General*

**MELANIE SENTER LUBIN**
*Securities Commissioner*

**KELVIN M. BLAKE**
*Assistant Securities Commissioner*

**KATHARINE M. WEISKITTEL**
*Assistant Securities Commissioner*

**PETER V. BERNS**
*General Counsel*

**MAX F. BRAUER**
*Senior Assistant Attorney General*
*Chief, Enforcement Unit*

October 14, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

On behalf of the appellees, I write to notify the Court of the decision in *KalshiEX LLC v. Schuler*, Nos. 26-3196, 26-5235, 2026 WL 2884087 (6th Cir. Sept. 25, 2026) (Ex. 1). *Schuler* affirmed the denial of Kalshi's requested preliminary injunction in Ohio and vacated a preliminary injunction in Tennessee.

First*, Schuler* held that sports event contracts are not "swaps." The phrase "associated with a potential" financial consequence requires an "inherent" connection where the contract is "commonly understood" to be used for hedging and price discovery to promote market stability. *Id.* at *8; *11-12. "Potential" means "the financial consequence need not actually come to fruition" but still requires an inherent connection. *Id.* at *11. This interpretation is consistent with the definition's other subparts and surrounding statutory provisions; Kalshi's reading, by contrast, ignores the words "associated with," renders other definitional subparts superfluous, and exposes off-DCM bettors to criminal liability. *Id.* at *12-15. *Schuler* concluded that

sports outcomes have only downstream economic consequences, if any, and lack an underlying market, as the CFTC previously reasoned. *Id.* at *8; *11; *16-18.

Second, *Schuler* held that, even assuming sports wagers are swaps, the CEA does not preempt state gambling laws. Applying the presumption against preemption, *Schuler* rejected express preemption because "exclusive jurisdiction" displaces direct DCM regulation, not ancillary laws like sports wagering. It is not typical express preemption language (unlike § 16(e)(2)). "Jurisdiction" is separate from other "duties and responsibilities," demonstrating that "jurisdiction" does not include all regulatory authority. Section 2(a)(1)(a), the court held, delineates regulatory responsibility, not preemption. This interpretation is consistent with federalism, clear statement rules, and Kalshi's rulebook. *Id.* at *18-23.

Third, *Schuler* rejected implied preemption because (1) the CEA "does not preempt any relevant field, even DCM trading," contains savings clauses, and permits state actions against DCMs; (2) compliance with impartial access requirements is not impossible since the rule prevents only discrimination in available markets, and others have complied via geofencing; (3) no obstacle exists because state gambling laws "do[] not subvert Congress's goals"; and (4) the Special Rule is a backstop that incorporates state law. *Id.* at *23-28.

Respectfully submitted,

/s/ Max F. Brauer

____________________

Max F. Brauer

cc: All Counsel of Record