**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**SECURITIES DIVISION**

**ANTHONY G. BROWN**
*Attorney General*

**MELANIE SENTER LUBIN**
*Securities Commissioner*

**KELVIN M. BLAKE**
*Assistant Securities Commissioner*

**KATHARINE M. WEISKITTEL**
*Assistant Securities Commissioner*

**PETER V. BERNS**
*General Counsel*

**MAX F. BRAUER**
*Senior Assistant Attorney General*
*Chief, Enforcement Unit*

October 26, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

Contrary to Kalshi's contentions (ECF 128-1), *KalshiEx LLC v. Raoul*, Nos. 1:25-cv-15406; 1:26-cv-03659; 1:26-cv-07363 (N.D. Ill. October 2, 2026), does not counsel reversal.

<u>Swaps</u>

First, *Raoul* is incorrect that a swap can be based on an event's outcome. Swaps are based on an event's "occurrence," which most sources recognize is distinct from an "outcome." *See* Appellees' Br. 51-52. *Raoul* is incorrect to assert that the same result could be phrased as both; its examples, "winning a game" and "season-long record going up," are outcomes. Op. 10-11.

Second, *Raoul*'s interpretation erases the words "associated with a . . . consequence," which require an inherent connection with a financial, economic, or commercial consequence, such that hedging and price discovery could promote

200 St. Paul Place, Baltimore, Maryland 21202
(410) 576-6360 ❖ (410) 576-6300
oag.maryland.gov

market stability; it also misinterprets “potential,” which modifies “consequence” (not “associated with”). As a result, *Raoul* adopts a “whole world” definition of swap, ignoring its own admonition that a swap’s consequences cannot be remote or limitless. Op. 14; *see* Appellees’ Br. 53-55; *KalshiEX LLC v. Schuler*, Nos. 26-3196, 26-5235, 2026 WL 2884087, at *11-12 (6th Cir. Sept. 25, 2026).

Finally, *Raoul* ignores its reasoning’s incongruence with three aspects of federal law: (1) if sports wagers are swaps, then they *must* be conducted on DCMs, so that all off-DCM sports wagers are felonies; (2) the Wire Act prohibits interstate sports wagering; and (3) sports wagers were banned when Dodd-Frank was enacted. Appellees’ Br. 9, 33-37.

`

Preemption

*Raoul* correctly notes that the Seventh Circuit has previously rejected express and field preemption. Op. 8-9; *contra* Appellant’s Br. 30, 53. *Raoul* ignores the presumption against preemption, however, and applies conflict preemption incorrectly. *Raoul* does not consider whether it is impossible to comply with both state law and federal law; identifies no reason why Kalshi cannot geofence like other firms; and identifies no obstacle to § 5’s enumerated purposes (which do not include regulatory uniformity). Appellees’ Br. 6-8, 25, 41-42, 49-50.

Finally, *Raoul* is incorrect that sports wagering laws directly affect DCM trading. Op. 19. Instead, Maryland’s complements the CEA. *See* Appellee’s Br. 49; *Schuler*, 2026 WL 2884087 at *21-23.

Respectfully submitted,

/s/ Max F. Brauer

Max F. Brauer

cc: All Counsel of Record