**CAROLYN A. QUATTROCKI**
*Chief Deputy Attorney General*

**LEONARD J. HOWIE III**
*Deputy Attorney General*

**CARRIE J. WILLIAMS**
*Deputy Attorney General*

**SHARON S. MERRIWEATHER**
*Deputy Attorney General*

**ZENITA WICKHAM HURLEY**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**SECURITIES DIVISION**

**ANTHONY G. BROWN**
*Attorney General*

**MELANIE SENTER LUBIN**
*Securities Commissioner*

**KELVIN M. BLAKE**
*Assistant Securities Commissioner*

**KATHARINE M. WEISKITTEL**
*Assistant Securities Commissioner*

**PETER V. BERNS**
*General Counsel*

**MAX F. BRAUER**
*Senior Assistant Attorney General*
*Chief, Enforcement Unit*

October 30, 2026

**VIA ECF**
Nwamaka Anowi, Clerk
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

Re: *KalshiEX LLC v. John A. Martin*, No. 25-1892

Dear Madam Clerk:

Contrary to Kalshi's contention (ECF 131), the CFTC's Interim Final Rule ("IFR") and Notice of Proposed Rulemaking ("NPRM") regarding swaps do not counsel in favor of reversal.

First, the CFTC's view that sports wagers are swaps is inconsistent with the statute. Sports wagers are not tradable, promote no purpose set forth in § 5, and (as the CFTC noted previously) lack an underlying market. *See KalshiEx LLC v. Schuler*, Nos. 26-3196, 26-5235, 2026 WL 2884087, at *11-12 (6th Cir. Sept. 25, 2026). In adopting Kalshi's limitless § 1a(47)(A)(ii) argument, the CFTC ignores the words "associated with" and even acknowledges that its interpretation extends the definition "indefinitely." NPRM 26.

Second, the CFTC's actions go beyond its statutory charge. Congress authorized the CFTC and SEC jointly—not the CFTC alone—to further define swaps.

200 St. Paul Place, Baltimore, Maryland 21202
(410) 576-6360 ❖ (410) 576-6300
oag.maryland.gov

And even when acting together, the agencies are not authorized to rewrite the definition. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 408 (2024) ("[T]he basic nature and meaning of a statute does not change when an agency happens to be involved.")

Third, the CFTC's inconsistency undermines any persuasiveness that the agency's views might otherwise have. *See* 603 U.S. at 388, 394, 411. The NPRM and IFR reverse the CFTC's longstanding view that historic consumer transactions are not swaps, and cannot be squared with its actions to ban gaming contracts and prohibit sports betting on DCMs. *See* Appellees' Br. 11-12, 16, 30, 33-34, 56.

Finally, although the CFTC acknowledges that swaps exclude transactions historically regulated by others, including gambling, it is incorrect to view gambling laws as focusing only on "house-based" wagering. IFR 11-21. Gambling regulation includes "any system or method of wagering, including . . . exchange wagering," Md. Code Ann., State Gov't § 9-1E-01(j), even where a licensee facilitates wagers between bettors, not the house. COMAR 36.10.01.02.B(24); *see also, e.g.,* 25 C.F.R. § 502.4 (a)-(c) (distinguishing "house banking" from "sports betting" and "parimutuel wagering"); *Hughes Props. v. State*, 680 P.2d 970, 971 (Nev. 1984) (similarly describing "percentage games").[1]

Respectfully submitted,

/s/ Max F. Brauer

Max F. Brauer

cc: All Counsel of Record

[1] Regardless, Kalshi functions like the "house" because of its use of "market makers." *See* Appellees' Br. 13-14.